# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

SCOTT MARSHALL,

            Plaintiff,

v.

ASPLUNDH TREE EXPERT CO.,
its Wholly owned Subsidiary;
UTILITY LINES CONSTRUCTION
SERVICES, INC.; DAVID ASSELIN, JR.,
Jointly and Severally,

            Defendants.

Case No. 2:16-cv-13426
Hon. _____

*Removed from:*
Wayne County Circuit Court
Case No.: 16-010319-CK
Hon. Kathleen Macdonald

_____

## <u>DEFENDANTS' NOTICE OF REMOVAL</u>

Please take Notice that Defendants Asplundh Tree Expert Co. ("ATE"), Utility Lines Construction Services, Inc. ("ULCS"), and David Asselin ("Asselin") (collectively "Defendants"), through their attorneys, Nemeth Law, P.C., join in and remove the above-captioned state court action from the Circuit Court for the County of Wayne, State of Michigan, pursuant to 28 U.S.C. §§ 1331, 1367, 1441, and 1446. Plaintiff's state law claims are completely preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Removal is proper on the following grounds:

1.     On or about August 15, 2016, an action was commenced in the Circuit Court for the County of Wayne, State of Michigan, entitled *Scott Marshall, Plaintiff v. Asplundh Tree Expert Co., Utility Lines Construction Services, Inc., and David Asselin, Defendants*, and assigned Case No. 16-010319-CK.

2.     The Summons and Complaint were served by certified mail on the registered agent for Defendants ATE and ULCS on September 1, 2016. The Summons and Complaint were served by certified mail on Defendant Asselin on or about September 7, 2016.

3.     Pursuant to 28 U.S.C. § 1446(a), a copy of the Summonses and Complaint (the only pleadings to date) are attached as Exhibit A to this Notice.

4.     This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. §1331, and is one which may be removed to this Court by Defendants pursuant to the provisions of 28 U.S.C. §1441(a) in that the state law claims are completely preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

5.     From approximately October 9, 2006 until February 26, 2016, Plaintiff was employed by Defendant ULCS. [Ex.A; Complaint, ¶¶ 9, 13]

6.     Plaintiff's employment with ULCS was governed by a collective bargaining agreement ("CBA") between Utility Workers Union of America, AFL-

CIO ("Union") and ULCS. The CBA is attached as Exhibit 1 to Plaintiff's Complaint. [Ex.A; Complaint, Exhibit 1]

7.     The Union is the exclusive bargaining representative as defined by the National Labor Relations Act, 29 U.S.C. §159(a), with respect to rates of pay, wages, hours of employment, and other conditions of employment for all bargaining unit employees with ULCS, including Plaintiff. [Ex.A; CBA, p. 1 (Scope)].

8.     The CBA governs the relationship between union-represented employees (such as Plaintiff) and ULCS and includes provisions addressing the final and binding resolution of grievances and disputes relating to discharges from employment by an appeal to the Labor Management Committee. [Ex.A; CBA, Art I, §§ 1.04-1.06; pp. 1-2].

9.     Section 301 of the Labor Management Relations Act ("Section 301") provides federal jurisdiction over suits concerning collective bargaining agreements between an employer and a labor organization "without respect to the amount in controversy." 29 U.S.C. § 185(a).

10.     Federal law exclusively governs a suit for breach of a collective bargaining agreement and preempts any state cause of action based on such an agreement or whose outcome depends on analysis of the terms of a collective bargaining agreement.

3

11.     Further, if "resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract," or if the rights claimed by a plaintiff "were created by the collective bargaining agreement" that claim must be treated as a claim under Section 301 and dismissed as preempted by federal labor law. *Allis-Chalmers v. Corp. v. Leuck*, 471 U.S. 202, 220 (1985); *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994).

12.     This is true even when a complaint is framed as merely presenting a state law claim and not a federal claim under Section 301. *Allis-Chalmers Corp.,* 471 U.S. at 220;  *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 376 F.2d 337, 340 (6th Cir. 1967) *aff'd,* 390 U.S. 557, 88 S. Ct. 1235, 20 L. Ed. 2d 126 (1968) (holding that a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint); *DeCoe v. Gen. Motors Corp.*, *supra,* at 216. (courts not bound by the well-pleaded complaint rule, but rather, may look to the essence of the plaintiff's claim).

13.     Here, Plaintiff's state law claims concerning the termination of his employment with ULCS all arise under, and require interpretation of, the CBA between ULCS and the Union:

a. Count I of Plaintiff's Complaint alleges that Defendants ULCS and ATE[1] breached the terms of the CBA by failing to discharge for just cause. [Ex.A; Complaint, ¶¶ 5, 15-22] However, any right to be discharged for just cause is a right to which Plaintiff is only entitled by virtue of his union membership and bargaining unit status and arises under the CBA. Determination of whether Plaintiff was discharged for just cause would require review and interpretation of the CBA, specifically its work rules, and the discipline and discharge policy contained therein. [Ex.A; CBA, Art I, §§ 1.04-1.06; pp. 1-2]

b. Count II of Plaintiff's Complaint also alleges that Defendants ULC and ATE breached the terms of the CBA by failing to render progressive discipline prior to discharge. [Complaint, ¶¶ 5, 23-29][2]  Count II unquestionably requires an analysis of the

---

[1] Defendant ATE was not Plaintiff's employer, is not a party to the contract that Plaintiff seeks to enforce, had no contractual relationship with Plaintiff or his Union, and is improperly named in the Complaint. The allegations violate Rule 11 of the Federal Rules of Civil Procedure. Nevertheless, the claims against ATE are preempted by Section 301 of the Labor Management Relations Act.

[2] ATE was not a party to the contract as plainly evident from the CBA attached as Exhibit 1 to the Complaint. The allegations against ATE in Count II violate Rule 11 of the Federal Rules of Civil Procedure.

terms of the CBA to determine whether Plaintiff was entitled to progressive discipline under the CBA and whether ULC breached the CBA in that regard. [Ex.A; CBA, pp. 1-2, 19-21] Further, any right Plaintiff may have to progressive discipline prior to discharge would only exist because of the CBA between ULCS and his Union.

c.   In Count III, Plaintiff alleges that individually named Defendant David Asselin tortiously interfered with the contractual relationship between Plaintiff and Defendants ULCS and ATE.[3] [Ex.A; Complaint, ¶¶ 5, 30-35]  In addition to stating no facts sufficient to support a claim against Defendant Asselin for tortious interference with the contractual relationship between ULCS and Plaintiff's Union, Plaintiff's allegations explicitly rely on the existence of the CBA between ULCS and the Union. In addition, any right to continued employment that Plaintiff may have had is created by and dependent upon the CBA.

---

[3] As previously noted, ATE was not a party to the contract and had no contractual relationship with Plaintiff or his Union. This allegation violates Rule 11 of the Federal Rules of Civil Procedure.

14.     In all three Counts of the Complaint, Plaintiff explicitly references and relies on the CBA itself.  In fact, Plaintiff attaches the CBA in support of his *entire* Complaint. It is plainly evident that Plaintiff's claims will require analysis and interpretation of the CBA and requires the Court to determine the existence of the rights Plaintiff may (or may not) have under the CBA. Questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from alleged breaches of the labor agreement, may not be resolved under state law. *Allis-Chalmers Corp.*, 471 U.S. at 211.

15.     Thus, Plaintiff's state law claims must be analyzed under Section 301, and are therefore governed and preempted by federal law.

16.     Because the Court has original jurisdiction over Plaintiff's claims, removal to federal court is proper. 28 U.S.C. §§ 1331, 1441(a).

17.     All of Plaintiff's claims are explicitly related to his employment, the CBA, and Defendant's termination of that employment and are preempted by Section 301. However, if the Court determines that any of Plaintiff's claims do not arise under or require interpretation of the CBA, it may nevertheless, exercise supplemental jurisdiction over that claim. 28 U.S.C. § 1367 ("in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims that they

form part of the same case or controversy"). Exercising supplemental jurisdiction here would be prudent because the claims arise out of the same common nucleus of operative facts and CBA.

18.     The alleged events giving rise to Plaintiff's claims occurred in Wayne County, Michigan, within the Eastern District of Michigan, Southern Division. [Ex.A; Complaint, ¶¶ 2, 8]

19.     This Notice is filed within thirty (30) days of Defendants' receipt of service of the Complaint filed by Plaintiff in Wayne County Circuit Court.

20.     The time for answering or otherwise pleading in the above-described action has not yet expired.

21.     All Defendants have joined in this Notice of Removal.

22.     Pursuant to 28 U.S.C. § 1446(d), this Notice of Removal will be served on all adverse parties hereto and the Clerk of the Circuit Court for the County of Wayne, State of Michigan.

Respectfully submitted,

NEMETH LAW, P.C.

By:   /s/   Susan D. Koval
      Susan D. Koval (P59297)
      Kellen Myers (P73456)
      Attorneys for Defendants
      200 Talon Centre Drive, Ste. 200
      Detroit, MI  48207
      (313) 567-5921
      skoval@nemethlawpc.com
      kmyers@nemethlawpc.com

Dated: September 21, 2016

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 21, 2016, I served the foregoing papers (*Defendants' Notice of Removal*) with the Clerk of the Court using the ECF system and by mailing same, via United States First-Class Mail, to Cristine M. Wasserman, Attorney for Plaintiff, Law Offices of Dean T. Yeotis, 611 W. Court Street, Flint, Michigan 48503, and by e-filing with the Clerk of the Wayne County Circuit Court.

s/ Susan D. Koval
Susan D. Koval (P59297)
Nemeth Law. P.C.
Attorney for Defendants
200 Talon Centre Drive, Ste. 200
Detroit, MI 48207
(313) 567-5921
skoval@nemethlawpc.com
P59297

# EXHIBIT A

| STATE OF MICHIGAN THIRD JUDICIAL CIRCUIT WAYNE COUNTY | SUMMONS AND COMPLAINT | CASE NO. 16-010319-CK Hon. Kathleen Macdonald |
|---|---|---|

2 Woodward Ave., Detroit MI 48226                                              Court Telephone No. 313-224-5225

| **Plaintiff** Marshall, Scott | v | **Defendant** Asplundh Tree Expert Co. |
|---|---|---|
| **Plaintiff's Attorney** Cristine M. Wasserman, P-53656 611 W Court St Flint, MI 48503-5000 | | **Defendant's Attorney** |

**SUMMONS**  **NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:

1.  You are being sued.
2.  **YOU HAVE 21 DAYS** after receiving this summons to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).  (MCR 2.111[C])
3.  If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued 8/15/2016 | This summons expires 11/14/2016 | Court clerk File & Serve Tyler |
|---|---|---|

*This summons is invalid unless served on or before its expiration date.  This document must be sealed by the seal of the court.

**COMPLAINT**  *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

**Family Division Cases**

☐ There is no other pending or resolved action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties.

☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.

The action   ☐ remains   ☐ is no longer   pending.  The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**General Civil Cases**

☒ There is no other pending or resolved civil action arise out of the same transaction or occurrence as alleged in the complaint.

☐ An civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.

The action   ☐ remains   ☐ is no longer   pending.  The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**VENUE**

| Plaintiff's residence (include city, township, or village) Genesee County, MI | Defendant(s) residence (include city, township, or village) Wayne County, MI |
|---|---|
| Place where action arose or business conducted Wayne County, MI | |

August 15, 2016
Date

Signature of attorney/plaintiff   CRISTINE WASSERMAN (P53656)

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01 (5/15) SUMMONS AND COMPLAINT MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a),(b), MCR 3.206(A)

| STATE OF MICHIGAN THIRD JUDICIAL CIRCUIT WAYNE COUNTY | PROOF OF SERVICE | CASE NO. 16-010319-CK |
|---|---|---|

TO PROCESS SERVER: You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

**CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE**

| ☐ **OFFICER CERTIFICATE** **OR** | ☐ **AFFIDAVIT OF PROCESS SERVER** |
|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that:      (notarization not required) | Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that:      (notarization required) |

☐ I served personally a copy of the summons and complaint,

☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint, together with _____
List all documents served with the Summons and Complaint

_____

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

I declare that the statements above are true to the best of me information, knowledge and belief.

| Service fee $ | Miles traveled $ | Mileage fee $ | Total fee $ | Signature |
|---|---|---|---|---|

Name (type or print)

Title

Subscribed and sworn to before me on _____ , _____ County, Michigan.
                                                                        Date

My commission expires: _____     Signature: _____
                                          Date                                    Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

**ACKNOWLEDGMENT OF SERVICE**

I acknowledge that I have received service of the summons and complaint, together with _____
                                                                                                                                        Attachments

_____ on _____
                                                            Day, date, time

_____ on behalf of _____
Signature

| STATE OF MICHIGAN<br>THIRD JUDICIAL CIRCUIT<br>WAYNE COUNTY | SUMMONS AND COMPLAINT | CASE NO.<br>16-010319-CK<br>Hon. Kathleen Macdonald |
|---|---|---|

2 Woodward Ave., Detroit MI 48226        Court Telephone No. 313-224-5225

| **Plaintiff**<br><br>Marshall, Scott | v | **Defendant**<br><br>Utility Lines Construction Services, Inc. |
|---|---|---|
| **Plaintiff's Attorney**<br><br>Cristine M. Wasserman, P-53656<br>611 W Court St<br>Flint, MI 48503-5000 | | **Defendant's Attorney** |

**SUMMONS** **NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state). (MCR 2.111[C])
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued<br>8/15/2016 | This summons expires<br>11/14/2016 | Court clerk<br>File & Serve Tyler |
|---|---|---|

\*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

**COMPLAINT** *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

**Family Division Cases**

☐ There is no other pending or resolved action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties.

☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.

The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**General Civil Cases**

☒ There is no other pending or resolved civil action arise out of the same transaction or occurrence as alleged in the complaint.

☐ An civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.

The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**VENUE**

| Plaintiff(s) residence (include city, township, or village)<br>Genesee County, MI | Defendant(s) residence (include city, township, or village)<br>Wayne County, MI |
|---|---|
| Place where action arose or business conducted<br>Wayne County, MI | |

August 15, 2016
Date      Signature of attorney/plaintiff   CRISTINE WASSERMAN (P53656)



If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01 (5/15) SUMMONS AND COMPLAINT MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a),(b), MCR 3.206(A)

| STATE OF MICHIGAN<br>THIRD JUDICIAL CIRCUIT<br>WAYNE COUNTY | **PROOF OF SERVICE** | CASE NO.<br>16-010319-CK |
|---|---|---|

**TO PROCESS SERVER:** You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

### CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

| ☐ **OFFICER CERTIFICATE** | **OR** | ☐ **AFFIDAVIT OF PROCESS SERVER** |
|---|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that:          (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that:          (notarization required) |

☐ I served personally a copy of the summons and complaint,

☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint, together with _____
_____ List all documents served with the Summons and Complaint

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

I declare that the statements above are true to the best of me information, knowledge and belief.

| Service fee<br>$ | Miles traveled<br>$ | Mileage fee<br>$ | Total fee<br>$ | Signature |
|---|---|---|---|---|
|  |  |  |  | Name (type or print) |
|  |  |  |  | Title |

Subscribed and sworn to before me on _____ , _____ County, Michigan.
Date

My commission expires: _____  Signature: _____
Date                                      Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

### ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _____
Attachments

_____ on _____
Day, date, time

_____ on behalf of _____
Signature

| STATE OF MICHIGAN<br>THIRD JUDICIAL CIRCUIT<br>WAYNE COUNTY | SUMMONS AND COMPLAINT | CASE NO.<br>16-010319-CK<br>Hon. Kathleen Macdonald |
|---|---|---|

2 Woodward Ave., Detroit MI 48226

Court Telephone No. 313-224-5225

| **Plaintiff**<br>Marshall, Scott | v | **Defendant**<br>Asselin, David |
|---|---|---|
| **Plaintiff's Attorney**<br>Cristine M. Wasserman, P-53656<br>611 W Court St<br>Flint, MI 48503-5000 | | **Defendant's Attorney** |

**SUMMONS**   **NOTICE TO THE DEFENDANT:**   In the name of the people of the State of Michigan you are notified:

1.  You are being sued.
2.  **YOU HAVE 21 DAYS** after receiving this summons to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).  (MCR 2.111[C])
3.  If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued<br>8/15/2016 | This summons expires<br>11/14/2016 | Court clerk<br>File & Serve Tyler |
|---|---|---|

*This summons is invalid unless served on or before its expiration date.  This document must be sealed by the seal of the court.

**COMPLAINT**   *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff.  Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

**Family Division Cases**

☐ There is no other pending or resolved action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties.

☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.

The action ☐ remains ☐ is no longer   pending.  The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**General Civil Cases**

☒ There is no other pending or resolved civil action arise out of the same transaction or occurrence as alleged in the complaint.

☐ An civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.

The action ☐ remains ☐ is no longer   pending.  The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**VENUE**

| Plaintiff(s) residence (include city, township, or village)<br>Genesee County, MI | Defendant(s) residence (include city, township, or village)<br>St. Clair County, MI |
|---|---|
| Place where action arose or business conducted<br>Wayne County, MI | |

August 15, 2016
_____
Date

Signature of attorney/plaintiff  CRISTINE WASSERMAN (P53656)

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01 (5/15) SUMMONS AND COMPLAINT MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a),(b), MCR 3.206(A)

| STATE OF MICHIGAN THIRD JUDICIAL CIRCUIT WAYNE COUNTY | PROOF OF SERVICE | CASE NO. 16-010319-CK |
|---|---|---|

**TO PROCESS SERVER:** You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

### CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

☐ **OFFICER CERTIFICATE**   OR   ☐ **AFFIDAVIT OF PROCESS SERVER**

I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that:         (notarization not required)

Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that:         (notarization required)

☐ I served personally a copy of the summons and complaint.

☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint, together with _____

    List all documents served with the Summons and Complaint

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
|  |  |  |
|  |  |  |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
|  |  |  |
|  |  |  |

I declare that the statements above are true to the best of me information, knowledge and belief.

| Service fee $ | Miles traveled $ | Mileage fee $ | Total fee $ |
|---|---|---|---|

Signature _____

Name (type or print) _____

Title _____

Subscribed and sworn to before me on _____ , _____ County, Michigan.
                                                Date

My commission expires: _____   Signature: _____
                              Date                          Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

### ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _____
                                                                                      Attachments

_____ on _____
                                          Day, date, time

_____ on behalf of _____

Signature

jp

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

SCOTT MARSHALL,

     Plaintiff,

CASE NO. 16-_____-CK

ASPLUNDH TREE EXPERT CO.,
its Wholly owned Subsidiary;
UTILITY LINES CONSTRUCTION
SERVICES, INC.; DAVID ASSELIN, JR.,
Jointly and Severally,

HON. _____

16-010319-CK
FILED IN MY OFFICE
WAYNE COUNTY CLERK
8/15/2016 1:57:18 PM
CATHY M. GARRETT

     Defendants.

_____/

LAW OFFICES OF DEAN T. YEOTIS
DEAN T. YEOTIS (P41290)
CRISTINE WASSERMAN (P53656)
NANCY K. CHINONIS (P71350)
Attorneys for Plaintiff
611 W. Court Street
Flint, MI 48503
(810) 767-6100

_____/

### COMPLAINT WITH JURY DEMAND

There is no other civil action between the parties arising out of the same transaction or occurrence as alleged in this Complaint, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge.

PLAINTIFF SCOTT MARSHALL, through his attorneys, the LAW OFFICES OF DEAN T. YEOTIS, complains of Defendants as follows:

### PARTIES AND JURISDICTION

1.     Plaintiff Scott Marshall is a resident of the County of Genesee, State of Michigan.

LAW OFFICES
**DEAN T. YEOTIS**
611 W. Court Street
Flint, MI 48503
(810) 767-6100
Fax (810) 767-6415

2.      Defendant Asplundh Tree Expert Co. is a foreign Corporation, which transacts business in the County of Wayne, State of Michigan.

3.      Upon information and belief, Defendant Utility Lines Construction Services Inc. (hereinafter "ULCS") is a wholly owned subsidiary of Defendant Asplundh doing business as ULCS, in the County of Wayne, State of Michigan.

4.      Defendant, Dave Asselin, Jr. is upon information and belief a resident of the State of Michigan.

5.      The claims which Plaintiff Scott Marshall asserts against Defendants in this case are:

      a.      Breach of Contract Failure to Discharge for Just Cause;

      b.      Breach of Contract Failure to Render Progressive Discipline Prior to Discharge; and

      c.      Tortious Interference with Contractual Relations against Defendant Asselin.

6.      The amount in controversy in this case exceeds Twenty-Five Thousand Dollars ($25,000).

7.      This Court has subject matter jurisdiction over this case based on the general subject matter jurisdiction provision of the Revised Judicature Act, MCL 600.605.

8.      This is a Court of proper venue for this action under MCL 600.1621 because this is the Court in the County in which Defendants transact business and have offices.

LAW OFFICES
DEAN T. YEOTIS
611 W. Court Street
Flint, MI 48503
(810) 767-6100
Fax (810) 767-6415

2

### GENERAL ALLEGATIONS

9.  Plaintiff, Scott Marshall began his employment with Defendants on or about October 9, 2006.

10.  Defendant David Asselin, Jr. was Plaintiff's supervisor and a management employee of Defendants ULCS and Asplundh.

11.  During the entire tenure of his employment, Plaintiff was an excellent employee and performed his job well.

12.  In fact, Plaintiff was a highly trained and specialized employee for Defendants performing duties associated with sub stations and utility lines.

13.  Plaintiff's employment with Defendants was terminated on February 26, 2016.

14.  Prior to his discharge, Plaintiff had never received discipline from Defendants' during the entire 9 and half year period of his employment.

### COUNT I: BREACH OF CONTRACT
### FAILURE TO DISCHARGE FOR JUST CAUSE

15.  Plaintiff incorporates by reference paragraphs 1 through 14 above.

16.  Defendant ULCS and Asplundh, by representations that it made to Plaintiff, including but not limited to, those guarantees contained within the Transmission Agreement between Utility Workers Union of America, AFL-CIO and Utility Lines Construction Services, Inc. promised that Plaintiff would not be terminated without good and just cause.

17.  In fact, Plaintiff was fired without good or just cause.

18.  Under Michigan law an employer must fulfill the promises and representations that it makes to their employees concerning job security.

LAW OFFICES
**DEAN T. YEOTIS**
611 W. Court Street
Flint, MI 48503
(810) 767-6100
Fax (810) 767-6415

3

19.   Because Defendants failed to discharge Plaintiff for good and just cause, Defendants violated the Michigan Wrongful Discharge Doctrine.

20.   The Transmission Agreement between Utility Workers Union of America, AFL-CIO, and Defendant Utility Lines Construction Services, Inc. does not provide Plaintiff with an opportunity for a fair and impartial review of the Employers' decision as required by Michigan law.

21.   Defendants thus, violated the Michigan Wrongful Discharge Doctrine and discharged Plaintiff in violation of his good and just cause guarantee.

22.   As a direct and proximate result of Defendants actions, Plaintiff has suffered significant economic damages and incurred other economic losses, including incurring litigation costs and attorney fees.

## COUNT II: BREACH OF CONTRACT
## FAILURE TO RENDER PROGRESSIVE DISCIPLINE PRIOR TO DISCHARGE

23.   Plaintiff hereby incorporates paragraphs 1 through 22 above.

24.   Defendants represented to Plaintiff that, if Plaintiff made a work related mistake, Plaintiff -- like all of Defendants' employees -- would receive progressive discipline prior to discharge.

25.   Plaintiff reasonably relied on the representations, and the promised progressive discipline was an important part of Plaintiff's job.

26.   In fact, Plaintiff was discharged without promised progressive discipline.

27.   Under Michigan law, an employer is obligated to live up to representations that the employer makes with respect to progressive discipline and job security.

28.   Because Defendants breached the aforementioned progressive discipline representations, Defendants violated the Michigan Wrongful Discharge Doctrine.

LAW OFFICES
DEAN T. YEOTIS
611 W. Court Street
Flint, MI 48503
(810) 767-6100
Fax (810) 767-6415

4

29.     As a direct and proximate result of Defendants actions, Plaintiff has suffered significant economic damages and incurred other economic losses, including incurring litigation costs and attorney fees.

## COUNT III: TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS AGAINST DEFENDANT ASSELIN

30.     Plaintiff incorporates paragraphs 1 through 29 above.

31.     Plaintiff had a contractual relationship with Defendants as is memorialized in the Transmission Agreement between Utility Workers Union of America, AFL-CIO and Utility Lines Construction Services, Inc attached as Exhibit 1.

32.     Defendant Asselin unlawfully, maliciously and unjustifiably interfered with Plaintiff's contractual relationship with Defendants ULCS and Asplundh by causing Plaintiff's discharge.

33.     Defendant Asselin did interfere with Plaintiff's employment relationship for personal and malicious reasons totally unrelated to a legitimate business purpose.

34.     Thus, Defendant Asselin committed the tort of Tortious Interference with Contractual Relations against Plaintiff.

35.     Based on Defendant Asselin's wrongful acts, Plaintiff has suffered economic damages as well as emotional harm and mental anguish damages.

## CONCLUSION

Plaintiff seeks judgment against Defendants for damages exceeding twenty-five thousand dollars ($25,000) as the jury deems just, together with costs, interest and attorneys fees pursuant to statute.

LAW OFFICES
DEAN T. YEOTIS
611 W. Court Street
Flint, MI 48503
(810) 767-6100
Fax (810) 767-6415

5

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial in the captioned case as guaranteed by Rule 2.508(B) of the Michigan Court Rules.

Respectfully submitted,

**LAW OFFICES OF DEAN T. YEOTIS**

DEAN T. YEOTIS P41290
CRISTINE WASSERMAN P53656
NANCY CHINONIS P71350
Attorneys for Plaintiff

Dated:  August 12, 2016.

LAW OFFICES
**DEAN T. YEOTIS**
611 W. Court Street
Flint, MI  48503
(810) 767-6100
Fax (810) 767-6415

6

**EXHIBIT 1**

# Transmission Agreement

## Between

## Utility Workers Union of America, AFL-CIO

## And

## Utility Lines Construction Services, Inc.

*July 1, 2014 through June 30, 2018*

## TRANSMISSION AGREEMENT

This is an Agreement by and between Utility Lines Construction Services, Inc. (hereinafter referred to as the "Employer") and Utility Workers Union of America, AFL-CIO (hereinafter referred to as the "Union").

## BASIC PRINCIPLES

The Employer and the Union have a common and sympathetic interest in the utility industry. A working system of dispute resolution and harmonious relations will help develop and maintain the relationship between the Employer, the Union, and the Public. Progress in the industry requires mutuality of confidence between the Employer and the Union. All will benefit by continuous peace and by adjusting any differences through rational, common sense methods. This Agreement is intended to further these basic principles.

## SCOPE

The Employer recognizes the Union to be the exclusive collective bargaining representative with respect to the rates of pay, wages, hours of employment and other conditions of employment for all employees performing the work required to maintain the ITC transmission system, which is defined in Appendix A of this Agreement.

## ARTICLE I

**Section 1.01**    This Agreement will remain in effect from July 1, 2014 through June 30, 2018. This Agreement will renew itself from year to year thereafter unless either party gives the other party written notice of desire to modify at least 90 days prior to June 30, 2014 or any subsequent July 1 anniversary date.

**Section 1.02**    This Agreement will be subject to change or supplement at any time by mutual consent of the parties. Any such change or supplement agreed upon will be reduced to writing, and signed by the parties hereto.

**Section 1.03**    There will be no stoppage of work by strike or lockout because of any proposed changes in this Agreement or dispute over matters relating to this Agreement. All such matters will be handled as stated herein.

**Section 1.04**    All grievances and disputes arising from or relating to the interpretation or application of this agreement will be settled by authorized representatives of the parties to this Agreement in the manner provided herein. The employee or the Union must initiate a grievance or dispute through written notice to the Employer within ten (10) days from the time the alleged violation became known. In the event the parties are unable to adjust a grievance or dispute within forty-eight (48) hours of notice to the Employer, the employee or the Union may refer the grievance/dispute to the Labor-

1

Management Committee.

**Section 1.05**    The Labor-Management Committee will be comprised of two (2) persons representing the Union and two (2) persons representing the Employer. It will meet regularly at times to be determined by the Parties and also within forty-eight (48) hours after either party requests a meeting. The Union will select the Union representatives and the Employer will select the management representatives. The Committee will select its own Chairperson and Secretary. All such grievances and disputes coming before the Labor Management Committee will be decided by a majority vote. A majority decision by the Committee will be final and binding.

**Section 1.06**    A non-probationary employee shall have the right to grieve his/her discharge from employment. If not resolved, the grievance may be appealed by the employee or the Union to the Labor Management Committee. A discharge may be overturned or modified only by a majority decision of the Committee. If the Committee deadlocks, there is no appeal and the discharge shall stand.

**Section 1.07**    Should the Labor-Management Committee fail to decide or adjust a grievance or dispute other than the discharge of an employee, the Union may refer the grievance/dispute to arbitration by providing written notice within twenty (20) days of the Labor-Management Committee's decision. The request for arbitration shall state in detail the nature of the dispute, the articles(s) and the section(s) of the Agreement allegedly violated, and the remedy requested. The dispute as stated in the request for arbitration shall constitute the sole and entire subject matter to be heard by the Arbitrator unless the parties agree to modify the scope of the hearing. Only one request shall be scheduled for the same arbitration hearing, except by mutual agreement of the parties.

The sole arbitrator shall be selected through the American Arbitration Association and in accordance with the rules of the Association. The Association shall be directed to submit a list of at least seven (7) names. A name shall be selected from the list agreeable to both parties. Each shall bear the expense of its own witnesses. The arbitrator shall without delay, hear the evidence and render his decision in writing, which shall be final and binding upon both parties for the duration of this Agreement.

The arbitrator shall have no right to add to, subtract from, alter, amend or modify any of the terms of this Agreement.

Upon written request, and mutual consent of the parties, time limits of any step may be extended.

**Section 1.08**    **(a)**    The Union shall have the right to appoint Stewards from among the ranks of qualified employees to assist in administering this Agreement. The Stewards will conduct his/her Union business during non-work time of the Steward and

other employees, except upon advance approval from his/her supervisor.   Upon advance approval from his/her supervisor the employees will not have any loss of straight time wages.  Union representatives will not have any loss of straight time wages for Labor-Management Committee activities.

(b)     The Employer agrees to pay fifty percent (50%) of the straight time wages for up to four (4) employees designated by the Union for main table negotiations for this Agreement which are held during normal work periods.   The Employer compensation shall not exceed forty (40) hours for each employee.  After the forty (40) maximum, time spent in negotiations shall be unpaid.

(c)     Each party will be responsible for compensating its representatives for any lost time spent with regard to arbitrations or Trustee activities associated with the parties' Taft-Hartley Trust Funds.

## ARTICLE II

**Section 2.01**    The Union understands the Employer is responsible to perform the required work. The Employer, therefore, will have no restrictions except those provided for in this Agreement. Examples of the prerogatives reserved to the Employer are: planning, directing and controlling the operation of all work; deciding the number and kind of employees to properly perform the work; hiring and laying-off employees; transferring employees from job to job within the Union's geographical jurisdiction; in determining the need, number and identity of the person(s) who will act as Foreman; requiring all employees to observe the Employer's and/or owner's reasonable rules and regulations not inconsistent with this Agreement; requiring all employees to observe safety requirements; and disciplining or discharging employees for just cause. The enumeration of the above Employer's prerogatives shall not be deemed to exclude its other prerogatives not herein listed.

**Section 2.02**    For the employees covered by this Agreement, the Employer will make regular payments to the Federal and State Governments for social security, worker's compensation, and unemployment insurance as provided for by law, and will furnish satisfactory proof of such to the Union upon request.

**Section 2.03**    (a)     Consistent with applicable law, employees may join or refrain from joining the Union.  An employee may resign from membership by sending notice thereof in writing to the Union by certified mail, return receipt requested.

(b)     The Employer agrees to deduct duly authorized membership dues (including such general assessments uniformly levied upon all members) from the wages of each employee who has voluntarily signed an authorization for such deductions and forward to the Union with notification of those employees for whom deductions have been made.  The Employer shall forward the deductions to the Union

3

by the 15th of the month following the month the dues were withheld. The Union shall provide written notice to the Employer of the authorized union membership dues and general assessments, if any.

Any such authorization may be revoked at any time by the employee sending written notice to the Employer.  The Employer will promptly notify the Union of any such revocation by forwarding a copy of the revocation.

(c)    The Union agrees to save the Employer harmless from any action growing out of this Section and commenced by any employee against the Employer. The Union assumes full responsibility for the disposition of the funds once received by the Union.

**Section 2.04    Holidays**    To be eligible for a paid holiday, an employee must be employed by the Employer for a period of 90 calendar days prior to the day celebrated as a holiday and he must work the regularly scheduled workdays immediately prior to and immediately following the holiday.

The following are the guaranteed paid holidays or the days celebrated as holidays:

| New Year's Day | Memorial Day | Independence Day |
|---|---|---|
| Labor Day | Thanksgiving Day | Day after Thanksgiving |
| Christmas Eve | Christmas Day | |

**Section 2.05**    Wages will be paid weekly, no later than quitting time on Friday, and no more than seven (7) days wages may be withheld at any time. Employees will be paid through direct deposit transfer of funds to a bank of the employee's choice. If a regular payday falls on a Holiday, employees will be paid on the preceding day. There will be no deductions from employees' pay except those provided and authorized by law and/or those authorized in writing by the individual employee.  The Employer shall make a pay stub available electronically to each employee.

**Section 2.06**    (a) The first six (6) months of employment for all new employees shall be a probationary or trial period during which period the employee may in the exclusive discretion of management be discharged without cause or notice and without recourse to the grievance procedure of this Agreement. Probationary employees retained beyond the probationary period shall be regular employees and their seniority shall date from the date of hiring.

(b) The Employer agrees to provide to the Union notice of hiring date of all new employees for the establishment of their seniority start date. The Union will maintain this seniority list.

**Section 2.07**    The Employer will provide specialized tools such as torque wrenches, deep well sockets and impact wrenches. Employees will provide general hand tools.

**Section 2.08**    All employees covered by this Agreement will be subject to the Employer's Zero Tolerance Substance Abuse Policy.

**Section 2.09**    Jury Duty    Employees shall be granted a leave of absence with pay when they are required to report for jury duty subject to the following procedure:

> (a) A copy of the official court notice must be submitted within two (2) days of receipt by the employee.
> (b) The employee must offer to report for work immediately before or following jury service and may be put to work at the discretion of the Employer.
> (c) The Employer may require "proof of service" rendered from the court.
> (d) Employees will be paid their regular hourly pay rate for jury service up to 5 days per contract year and will be permitted to use available vacation time or personal days to be paid for additional time off.

**Section 2.10**

> **(a)** The Employer agrees that in the event it anticipates a reduction in the workforce, classification or otherwise, it will notify the Union as far in advance as possible.
>
> **(b)** As soon as practical after such notification, the parties will meet to discuss options available to them so as to prevent any layoff from employment if possible. In the event the parties fail to agree on options to avoid a layoff, the Employer will review the employees within the affected classification and Region(s) seeking to retain the most qualified employees. If the qualifications are equal, seniority (defined as date of employment) will be the determining factor.
>
> **(c)** If it is determined that any employee is affected by such a lay-off and the employee meets the posting qualifications for any open position, the Employer will allow the employee to bid on such an opening. The Employer reserves the right to allow employees within a department to have bidding opportunities within that department first before posting a vacancy for any affected employee(s).
>
> **(d)** If in the event no vacancy exists, or no vacancy exists in which the employee meets the posting qualifications for, and the employee(s) is subsequently laid

off from employment, the Employer will from six (6) months from the date of layoff, inform the laid off employee(s) of all job openings that arise.

**(e)** If the employee(s) meet the posting qualifications of vacancies that arise in this six (6) month timeframe, the employee will be afforded the same bidding opportunities as an internal applicant.

**(f)** The Employer is under no obligation to inform a laid off employee(s) past the six (6) month period of any job vacancy.

**(g)** If the Employer offers a laid off employee an available position for which they are qualified (whether the classification from which the employee was laid off or to another classification) and the laid off employee rejects the offer, the employee shall be afforded no further offers of employment or consideration for any other positions.

## ARTICLE III

**Section 3.01** (a)　　The work week shall be defined as seven (7) consecutive twenty-four (24) hour periods beginning at 12:01 a.m. on Sunday.  The normal work schedule shall consist of five (5) consecutive eight (8) hours days starting at 7:00 a.m. through 3:30 p.m. with a one-half (1/2) hour unpaid lunch period Monday through Friday, inclusive.

(b)　　The Employer with twenty-four (24) hours' notice to the Union, may institute a work schedule consisting of four (4) ten (10) hour days between the hours of 7:00 a.m. and 6:00 p.m., Monday through Thursday with a one-half (1/2) hour unpaid lunch period.  If the Employer adopts a ten hour day schedule, overtime at the rate of time and one-half (1 ½) times the regular rate of pay will be paid for all hours worked in excess of ten (10) hours in a workday.  Friday may be used as a make-up day at straight time rates.

(c)　　The Employer will be permitted to adjust the starting hours of the shift by up to two (2) hours in order to meet the needs of the customer.

**Section 3.02**　　(a)　　When shifts are required, the second shift (between the hours of 4:30 p.m. and 1:00 a.m. will receive an additional $1.00 of the employee's base wage per hour for all hours worked, and third shift (between the hours of 12:30 a.m. and 9: a.m. will receive an additional $2.00 of the employee's base wage per hour for all hours worked.

6

(b)     If the parties to this Agreement mutually agree, the shift week may commence with the third shift at 12:30 a.m. Monday to coordinate the work with the customer's work schedule.  However, any adjustment will last for at least five (5) consecutive days duration unless mutually changed by the parties to this Agreement.

(c)     An unpaid lunch period of thirty (30) minutes will be allowed on each shift.  All overtime work required before the established start time and after completion of eight (8) hours of any shift will be paid at one and one-half time the "shift" hourly rate.

(d)     There will be no requirement for a day shift when either a second or third shift is worked.

**Section 3.03**     Except for make-up time provided herein, all time worked outside of the normal scheduled shift or in excess of forty (40) straight time hours worked per week shall be paid at the rate of time and one-half (1 ½) the regular straight time rate of pay. Time worked does not include lunch breaks.  Except for make-up time provided herein, all work commencing with the beginning of the established workday on Saturdays or the first off day in the workweek shall be paid at the rate of time and one-half (1 ½).  All work commencing with the beginning of the established workday on Sundays, the second off-day in the workweek and/or on holidays shall be paid at double time.

**Section 3.04**     When employees are required to work on Saturdays or Sundays or 1st or 2nd off day, they will be notified by noon on day preceding 1st off day whether the work is on or off. The regular show-up rules apply for all scheduled work.

**Section 3.05**     There will be no pyramiding of overtime rates and double the straight time rate will be the maximum compensation for any hour worked.

**Section 3.06**     Employees will be at their assigned location/job at the scheduled start time.

**Section 3.07**     Any employee who works sixteen (16) or more hours within a twenty-four (24) hour period will, whenever possible, be released for an eight hour period before he/she is required to report to work for his/her next regular daily work period.  If, however, the Company is unable to release such employee, he/she shall receive two times his/her straight-time rate of pay for all hours worked in excess of sixteen (16) hours until he/she is released from work for eight hours.

**Section 3.08**     (a) Employees reporting for work and unable to work because of inclement weather or other conditions beyond their control will be paid two (2) hours reporting time. If rain interferes with the construction operations after the employees have started work they will be paid for actual hours worked with a minimum of two (2)

7

hours. Employees must remain on the job site unless excused by the Employer.

      (b) Employees working in the rain will be furnished with rain gear by the Employer. Employees will be accountable for the following equipment issued to them: hard hat, rain gear, safety glasses, high voltage rubber gloves, protectors, glove bags, sleeves, and sleeve bags provided to classification requirements.

      (c) Crew time lost during the normal work week due to inclement weather may be made up by working not less than four (4) hours nor more than eight (8) hours at the straight-time rate of pay on Friday or Saturday.

**Section 3.09**     If an employee is temporarily assigned to a job with a higher rate of pay, he will be paid the higher rate for the period of temporary assignment. If an employee is temporarily assigned to a lower grade job, he will receive their regular rate during the period of this temporary assignment.

**Section 3.10**     The Employer will discuss employee transfers between regions with the Union before the transfer, except if it is an emergency. If there is an emergency transfer between regions, the Employer will discuss the transfer with the Union as soon as practical.

**Section 3.11**     An employee who is called outside their regularly scheduled hours of work will be paid not less than a four (4) hour minimum. In the event the employees is called out more than four (4) hours ahead of their regularly schedule shift, such employee shall be paid one and one-half times their regular rate of pay until the employee is relieved of duty.

**Section 3.12**     When an employee is required to work beyond their scheduled workday, they will be provided a meal allowance under the following conditions:

1) After two (2) or more hours and another meal allowance every six (6) hours of continuous work thereafter. However, in no case shall an employee be entitled to more than three (3) meals in any twenty-four (24) hour period.
2) A meal allowance shall be paid for answering a call-out.
3) The Employer will pay a meal allowance of $15.00.

### ARTICLE IV

**Section 4.01**     The Employer and the Union agree to pursue continuous improvements in job descriptions and work processes for productivity improvement.

**Section 4.02**     Applicable wage rates are set forth in Appendix "A" of this Agreement.

Apprentice progression to next step every 6months or more in which the employee

works at least 1000 hours and successfully completes all on-the-job training modules and proficiency reviews, as well as apprenticeship related courses delivered at community colleges and/or formal training facilities,

| | | |
|---|---|---|
| Apprentice | Step 1 | 60% of base |
| Apprentice | Step 2 | 65% of base |
| Apprentice | Step 3 | 70% of base |
| Apprentice | Step 4 | 75% of base |
| Apprentice | Step 5 | 80% of base |
| Apprentice | Step 6 | 85% of base |
| Apprentice | Step 7 | 90% of base |

## ARTICLE V

**Section 5.01**    The Employer and the Union will collaborate on the "On the Job Training" of the apprentice. All apprentices will attend a community college course that has an apprentice program. The apprentice will attend classes outside of his/her shift and on their own time.

**Section 5.02**    The Employer agrees to contribute fifty cents ($.50) per employee per worked hour for all hours worked in each pay week to the UWUA Training and Development Trust Fund, and to execute and be bound by all documents and trust agreements as required by that Fund. All additional elements of Article V, Section 5.01 of the Agreement remain in full force and effect. If the Fund maximum balance of $1,000,000 (one million dollars) is exceeded, the Union will notify the Employer to cease contributions into the Fund until the Fund balance is below the $1,000,000 cap.

## ARTICLE VI

**Section 6.01**    Unless employees elect in writing to opt out of participation for the 401(k) Plan, all employees must contribute at least one percent (1%) of their earnings into the Utility Workers Union of America Deferred Compensation Fund 401(k) Plan (hereinafter "DCF"), a defined-contribution, multi-employer pension plan.

Effective July 1, 2014, the Employer will match 60% of the first six percent (6%) of earnings contributed by the employee.

Effective June 28, 2015, the Employer will match 70% of the first six percent (6%) of earnings contributed by the employee.

9

Effective July 3, 2016, the Employer will match 80% of the first six percent (6%) of earnings contributed by the employee.

Effective June 25, 2017, the Employer will match 100% of the first six percent (6%) of earnings contributed by the employee.

**Section 6.02**    (a)    The Employer agrees to contribute $6.50 per employee per hour worked to the UWUA Health and Welfare Fund. In addition, employees will be required to contribute seventeen dollars and fifty cents ($17.50) or such other additional amount to be determined by the Trustees, to be deducted by payroll deduction for employee only coverage for the insurance plan. Employees who elect dependent coverage will contribute an additional amount to be determined by the Trustees of the Fund. Should the Trustees of said Fund require contributions in excess of the amount set forth herein, the additional amounts shall be deducted from the employees' wages by payroll deduction. The Company agrees to increase this contribution in accordance with the following schedule.

Effective June 28, 2015 the Employer agrees to contribute $7.00 per employee per hour worked to the Utility Workers Union of America Health and Welfare Fund.

Effective July 3, 2016 the Employer agrees to contribute $7.50 per employee per hour worked to the Utility Workers Union of America Health and Welfare Fund.

Effective June 25, 2017 the Employer agrees to contribute $8.00 per employee per hour worked to the Utility Workers Union of America Health and Welfare Fund.

(b) The authority of the Trustees of the UWUA Health and Welfare Fund includes the authority (1) to establish the level of health care benefits; (2) to modify the level of health insurance benefits, if necessary; and (3) to require employees to pay a share of the monthly premiums for health care benefits, if necessary. All employees, except those who opt out of health insurance coverage pursuant to Appendix "A", will be required to pay their share of monthly health insurance premiums, if necessary, as determined by the Trustees.

(c)    The Union understands that the Employer's agreement to contribute to the UWUA Health and Welfare Fund (the "Fund") is based on its understanding that (1) the Fund is in compliance with, or will be in compliance with, all of the provisions of the federal Patient Protection and Affordable Care Act, as the same may be amended from time to time (the "ACA"), as of the applicable effective dates. In the event that the Employer is assessed or subjected to any such penalties, fines or other charges under

10

the ACA with respect to any bargaining unit employee on whose behalf it is required to make contributions to the Fund, the Employer may immediately cease participation in the Fund and this agreement shall be reopened to negotiate over a substitute medical plan.

**Section 6.03**   The Employer agrees to annually provide flame retardant clothing to each employee, as required under applicable law.

**Section 6.04   Paid Vacation**

(a) Employees who have completed three years of service will be eligible for one (1) week of paid vacation (40 hours). Employees will be eligible for such vacation on their anniversary date of employment.

(b) Vacation time shall not be cumulative from year to year and must be taken in the twelve months following the time it is earned. Any unused vacation time will be forfeited. Employees must request and receive approval from their General Foreman at least two (2) weeks in advance of the intended vacation. Vacation time off is paid at the employee's base pay rate at the time the vacation is taken.

(c) An employee who leaves the service of the company and provides at least two (2) weeks notice of his/her intent to quit or who is laid off by the company for lack of work shall be entitled to their earned but unused vacation time. An employee who quits without the notice required herein or who is terminated for cause will forfeit any vacation payments.

### ARTICLE VII
### TRAVEL TIME AND MILEAGE

**Section 7.01**   In all cases, mileage reimbursement is provided at the standard IRS compensation rate when driving a personal vehicle.

**Section 7.02**   Employees who report to a headquarters, company office or ITC property are expected to be at their reporting location promptly at shift starting time and will not be compensated for their commute.

**Section 7.03**   For employees with company vehicles, shift starting time and shift stopping time starts and ends at the pre-trip and post-trip inspection. Post-trip inspections shall be completed at the end of the day.

**Section 7.04**   Those employees who are not assigned a company vehicle, and who are directed to report to other than their normal reporting location will be compensated for drive time in excess of the first thirty (30) minutes from their residence

11

or in excess of the last thirty (30) minutes to their residence on their regular scheduled work day.

**Section 7.05**     Employees who are called out for emergencies after hours shall indicate to the ULCS Dispatcher their expected depart time.  The Dispatcher may determine the response time is not adequate and may call another employee.

**Section 7.06**     In the event that an employee answers an emergency call-out after hours with a personal vehicle, the employee is reimbursed for mileage from their home to the job site and back to their home.  An employee is also reimbursed for mileage between job sites in their assigned region, when using a personal vehicle.

**Section 7.07**     Overnight Travel:  In the event that an employee must travel more than 100 miles from his or her assigned area, three options are offered for compensation:

    a.      The employee may turn in lodging and meal receipts and receive full reimbursement for reasonable expenses.  The maximum meals for each overnight stay, that are eligible for reimbursement or the optional $15.00 meal allowance, are dinner the evening of the overnight stay, breakfast the next morning and noon lunch the next day.

    b.      The employee may elect to receive a $90/night stipend to cover lodging and meals.

    c.      Upon supervisor's approval the employee may elect to travel to and from the job site and receive reimbursement for mileage.

In lieu of receiving meal reimbursements and turning in receipts, employees have the option to take $15.00 meal allowances for each meal covered under this section.  These $15.00 meal allowances will be taxable income.  For each individual overnight stay, an employee must either turn in meal receipts for reimbursement for all meals, or take the optional $15.00 meal allowance for all meals, pertaining to that individual overnight stay.

**Section 7.08**     Employees may be permitted to take a company vehicle home.  It is understood the vehicle is assigned to the employee to maximize the employee's productive time on the job, more efficiently report to a particular job site at the beginning of the day and to expedite responses to after-hours emergency call outs.  As such, employees are expected to maintain a domicile within their assigned areas or no more than thirty (30) minutes from the nearest customer facility within their assigned work area.

An employee who fails to respond to call-outs at least fifty percent (50%) of the time or

who abuses the privilege of the assigned vehicle may be subject to loss of the assigned vehicle.

Field employees will indicate to the ULCS Dispatcher if they are not available for a callout that evening or weekend.  The dispatcher will endeavor to call the remaining employees before other employees are called.  A callout report will be generated, identified by warehouse for publication on a weekly basis.

The Employer reserves the right to rescind home assignment of a company vehicle to an employee at any time in which event such employee shall than report to the nearest approved customer facility within their assigned area at their shift starting time to retrieve an assigned vehicle and shall not be compensated for the commute.

**Section 7.09**.        Apprentices in their first six months of employment will not be compensated for traveling to the job site.  After six months of employment, apprentices will be compensated for travel time only for travel to a reporting location outside of their assigned region.

## ARTICLE VIII

Should any provision of this Agreement be declared illegal by any court of competent jurisdiction, such provision will immediately become null and void, leaving the remainder of this Agreement in full force and effect and the parties will, there upon, seek to negotiate substitute provisions which are in conformity with the applicable laws.

## ARTICLE IX

Neither the Employer, the Union, or the employees will in any way authorize, ratify, encourage or otherwise support any act or conduct that would be contrary to the Civil Rights Act of 1964, as amended, or any other State or Federal laws providing for Equal Employment Opportunity and prohibiting discrimination because of race, color, national origin, religion, sex, disability or age.

The use of the male or female gender in this Agreement shall include the opposite gender.

In witness whereof, the parties have hereto set their hands and seals at Novi this _____ day of _____, 2014.


Signed For                                              Signed For

13

UTILITY LINES CONSTRUCTION
SERVICES, INC.

David A. Rodak

Date: 10/22/14

UWUA AFL-CIO

Date: 14. Oct. 2014

14

# APPENDIX "A"
## UTILITY WORKERS UNION OF AMERICA, AFL-CIO
## AND
## UTILITY LINES CONSTRUCTION SERVICES, INC.
## MASTER COLLECTIVE BARGAINING AGREEMENT

## 1. Michigan
**Scope:** The ITC transmission system in the lower peninsula of the State of Michigan (work historically performed by the Local on Transmission facilities and equipment) including all system facilities such as switch yards, switching stations, and substations, but excluding the construction and maintenance of towers and transmission lines between such facilities.

Section 4.05 Wages

| Classification | Current | 7/1/2014 | 6/28/2015 | 7/3/2016 | 6/25/2017 |
|---|---|---|---|---|---|
| Operator/EMJ Foreman | N/A | $42.99 | $44.06 | $45.27 | $46.06 |
| Operator / EMJ Technician | $38.38 | $39.44 | $40.42 | $41.53 | $42.26 |
| Cable Test / Underground Splicer Technician | $38.38 | $39.44 | $40.42 | $41.53 | $42.26 |
| Relay / Equipment Performance Technician | $40.30 | $41.41 | $42.44 | $43.61 | $44.37 |
| After 5 years as Journeyman | N/A | $45.14 | $46.26 | $47.54 | $48.36 |
| Office Technician (Hired Before 7/1/14) | $23.22 | $23.86 | $24.46 | $25.13 | $25.57 |
| Office Technician (Hired After 7/1/14) | N/A | | | | |
| Start | | 60% of Max | 60% of Max | 60% of Max | 60% of Max |
| After 1 year: | | 80% of Max | 80% of Max | 80% of Max | 80% of Max |
| After 2 years (Max) | | $23.86 | $24.46 | $25.13 | $25.57 |
| Arborist (Hired Before 7/1/14) | $38.38 | $39.44 | $40.42 | $41.53 | $42.26 |
| Arborist (Hired After 7/1/14) | N/A | | | | |
| Start | | 60% of Max | 60% of Max | 60% of Max | 60% of Max |
| After 1 year: | | 80% of Max | 80% of Max | 80% of Max | 80% of Max |
| After 2 years (Max) | | $32.61 | $32.61 | $33.51 | $34.10 |
| Dispatcher (Hired Before 7/1/14) | $23.22 | $23.86 | $24.46 | $25.13 | $25.57 |
| Dispatcher (Hired After 7/1/14) | N/A | | | | |
| Start | | 60% of Max | 60% of Max | 60% of Max | 60% of Max |
| After 1 year: | | 80% of Max | 80% of Max | 80% of Max | 80% of Max |
| After 2 years  (Max) | | $23.86 | $24.46 | $25.13 | $25.57 |
| Vegetation Management Technician | $23.22 | $23.86 | $24.46 | $25.13 | $25.57 |
| Transmission Line Patroller | $30.00 | | | | |
| Start | | 60% of Max | 60% of Max | 60% of Max | 60% of Max |
| After 1 year: | | 80% of Max | 80% of Max | 80% of Max | 80% of Max |
| After 2 years  (Max) | | $30.83 | $31.60 | $32.46 | $33.03 |
| Technical Writer | $32.61 | $33.51 | $34.34 | $35.29 | $35.91 |
| Equipment Specialist | $41.68 | $42.83 | $43.90 | $45.10 | $45.89 |
| Scheduling Specialist | $39.77 | $40.86 | $41.89 | $43.04 | $43.79 |
| Field Technician (Hired Before 7//1/14)* | $32.61 | $33.51 | $34.34 | $35.29 | $35.91 |
| Facilities Technician | N/A | | | | |
| Start | | 60% of Max | 60% of Max | 60% of Max | 60% of Max |
| After 1 year | | 80% of Max | 80% of Max | 80% of Max | 80% of Max |
| After 2 years (Max) | | $27.00 | $27.00 | $27.74 | $28.23 |

*The Field Technician classification will not be used as incumbents leave.  Replacements will be classified as Facilities Technicians.

**Other Conditions:**

It is recognized that certain exempt employees hired prior to July 1, 2006 were provided the opportunity to sign a waiver of participation and opt out of the UWUA Health and Welfare Plan and receive the $3.50 per employee per hour worked employer contribution pass through. The Employer agrees to maintain such payment to those employees for the term of this Agreement. Employees who have not chosen such an option before July 1, 2006, will be required to participate in the UWUA Health and Welfare Fund as provided herein,

**HOLIDAYS**.        In addition to the holidays provided in Section 2.11 of the Master Agreement, the following holidays shall be applicable:  New Year's Eve, Martin Luther King Day and Good Friday.

**VACATION.**        In addition to the vacation provided in Section 6.04 of the Master Agreement, an employee who has completed at least 5 years or more of service will be eligible for an additional week (two weeks, 80 hours) of paid vacation.  Employees will be eligible for such vacation on their anniversary date of employment.

**PERSONAL DAYS**

              Employees who have completed six (6) months of service will be eligible for four (4) personal days off with pay to be used during the following twelve (12) months.  Effective June 28, 2015, employees will be eligible for five (5) personal days off with pay.

Employees will be able to defer up to five (5) personal days to succeeding years. Effective June 28, 2015, employees will be able to defer up to seven (7) personal days to succeeding years.

**WELDING AND CRANE OPERATORS**

Employees will receive a premium of two dollars ($2.00) above their applicable rate of pay for the hours actually performing welding or crane operation.

In witness whereof, the parties have hereto set their hands and seals at Novi this _____ day of _____, 2014.

Signed For                                          Signed For

UTILITY LINES CONSTRUCTION                          UWUA, AFL-CIO
SERVICES, INC.

_____                             _____
      David   A. Rodak
Date: _10/22/14_____                        Date: _14, Oct. 2014_____

1.      **[INSERT OTHER LOCATION]**

2.      **[INSERT OTHER LOCATION]**

3.      **ETC**

17

## ADDENDUM

The following is an addendum to the collective bargaining agreement entered into by and between Utility Line Construction Services, Inc, (hereinafter referred to as the "Employer") and the Utility Workers Union of America (hereinafter referred to as the "Union") effective from July 1, 2014 through June 30, 2018.

### Safety Incentive Bonus

A The Employer agrees to offer a cash safety incentive bonus to be paid quarterly with the money distributed under the provisions listed below:

(1) The safety incentive bonus amount will be four and one-half percent (4.5%) of the employee's gross wages for the quarterly period,

(2) The safety incentive will be paid no later than the second week following the end of each quarter, specifically July through September, October through December, January through March, and April through June, The safety bonus incentive will be subject to withholdings required by law,

(3) An employee who incurs an OSHA reportable on the job injury, in which he/she is at fault, will forfeit the safety incentive payment for the period in which the injury occurs,

(4) An employee who causes a property damage claim in excess of two hundred ($200.00) dollars shall forfeit his/her safety incentive payment for the period in which the damage occurs,

(5) An employee who causes an automotive (vehicular) accident in excess of $500,00 and/or which results in a bodily injury claim shall forfeit his/her safety incentive payment for the quarter in which the accident/claim occurs,

(6) An employee who fails to follow established processes and procedures causing an outage shall forfeit his/her safety incentive payment for the quarter in which the outage occurs.

(7) Forfeiture of a safety incentive payment does not exclude the employee from other disciplinary action (warning, suspension, or termination), which may be appropriate,

B, New hires will receive their quarterly safety incentive bonus for their first full quarter of employment

C. Upon request, the Employer will meet with the Union quarterly to review the disqualifications.

In witness whereof, the parties have hereto set their hands and seals at Novi this _____ day of _____, 2014.

Signed For

UTILITY LINES CONSTRUCTION
SERVICES, INC.

David A. Rodale

Date: 10/22/14

Signed For,

UWUA, AFL-CIO

Manuel Chuman

Date: 14 Oct. 2014

## ULCS - UWUA DISCIPLINARY POLICY

In the interest of maintaining the highest levels of service to the customer, employee safety, respect for the employees and professionalism toward the public served by the Employer and its' customer, the Employer and the Union have instituted the following Disciplinary Policy.

The Employer will apply this Disciplinary Policy without discrimination as to race, color, religion, sex, age, national origin or disability.

Subject to the provisions set forth below for serious offenses, the Employer agrees to administer discipline for minor offenses in accordance with the following procedure:

| | | |
|---|---|---|
| 1. | First Offense | Verbal warning |
| 2. | Second Offense | Written warning |
| 3. | Third Offense | Discharge, demotion, suspension or other disciplinary action whichever is appropriate for the offense. |

For purposes of the paragraph above, absenteeism/tardiness will be treated separately from other types of offenses.

Copies of disciplinary actions will be given to the employee. The employee will acknowledge awareness of the action by signing the notice. Copies of disciplinary action resulting in a suspension, demotion or termination will be provided to the Union as soon as practicable. Prior to discharge, the Employer will suspend an employee without pay and will forthwith meet with the employee and a duly authorized representative of the Union.

In applying this Disciplinary Policy the Employer shall not consider any warning for an offense which took place more than twenty-four (24) months before any disciplinary action, unless the employee has been disciplined for a subsequent offense.

Where an Employee commits a serious offense which endangers the Employer's relationship with the customer, conduct which could result in injury or death to the employee, other employees, etc., the Employer shall have the right to by-pass any or all of the progressive discipline steps and may suspend, demote or discharge the Employee immediately. In cases of serious offenses, the Employer shall notify the Union office immediately of the nature of the action taken.

Serious offenses shall include but shall not be limited to the following:

1.  Being under the influence of or use of illegal drugs or alcoholic beverages during working hours.
2.  Possession or use of illegal drugs or alcoholic beverages during working hours.
3.  Theft of property, equipment or supplies of the Company, customer or property owner.

19

4.  Performing or leaving work in a condition that jeopardizes the life, limb, or property of the customer, Employer, employees or the public.
5.  Serious violation of the Employer's or customer's facility security protocols.
6.  Serious violation of Red Tag policies or procedures that jeopardizes the life, limb, or property of the customer, Employer employees or the public.
7.  Failure to report an on-the-job injury or near miss safety infraction.
8.  Repeated warnings of absenteeism, tardiness or ending work early as documented by the Employer's time sheets, security system monitoring or electronic vehicle tracking systems.
9.  Repeated warnings for violations of traffic laws as documented by moving violations or through electronic vehicle tracking systems.
10. Repeated misreporting of time sheets or falsification of other records of the Employer.
11. Assault on fellow workers, member of the public, customer representative or a company representative.
12. Possession of a weapon in a company or customer vehicle or on the job site.
13. Sleeping during the work day.
14. Repeated warnings for violation of minor safety rules.
15. Repeated insubordination.
16. Disorderly conduct.
17. Repeated or significant abuse of company equipment.
18. Significant damage to company or customer's equipment resulting from negligence.
19. Unauthorized use of company or customer vehicles, tools or equipment.

It is understood that the Employer's customer intends to install electronic vehicle monitoring systems in some or all of its fleet of vehicles utilized by employees covered by this Agreement. It is further understood that the customer and/or the Employer may utilize the electronic vehicle monitoring systems to ensure the employee's compliance with pre-trip and post-trip vehicle inspection programs, starting and quitting times, efficient routing to and from customer facilities and/or job sites, etc. The Employer shall notify the Union of what data the Employer or customer will collect.

The Employer agrees to address employee misconduct discovered through the electronic vehicle monitoring system by use of the progressive discipline policy described above. Should the Employer become aware that an employee is operating a vehicle above the posted speed limit or operating a vehicle unsafely, the employee will normally be subject to counseling before formal disciplinary action is taken, unless reckless behavior is associated with the traffic violation. However, the Employer may forego the progressive discipline and resort to serious discipline for behavior discovered through electronic vehicle monitoring systems which could be characterized as reckless driving or theft of time from the Employer.

In all cases, the employee shall have the right to provide an explanation.

The Employer recognizes that there are appropriate situations in which employees idle vehicles, such as; initial start-up, operation of auxiliary equipment and during cold or hot weather periods.

## LETTER OF AGREEMENT

This Letter of Agreement is made and entered into by and between Utility Lines Construction Services, Inc. (hereinafter referred to as the "Employer") and Utility Workers Union of America (hereinafter referred to as the "Union").

Whereas, the parties hereto entered into a collective bargaining agreement effective from July 1, 2014 through June 30, 2018; establishing terms and conditions of employment for employees of the Employer working on the property of the International Transmission Company in the State of Michigan; and

Whereas, the parties reached an additional understanding and agreement which is set forth below:

Agreement

1. Employees whose assigned vehicle is unavailable due to repairs or maintenance shall be provided a replacement vehicle whenever possible.
2. If a replacement vehicle is not available and an employee has to use a personal vehicle the employees shall be paid for the commute time and shall be reimbursed for mileage.

Signed For

UTILITY LINES CONSTRUCTION
SERVICES, INC.

David A. Rodak

Date: 10/22/14

Signed For

UWUA, AFL-CIO

Date: 14. Oct. 2014

22

| STATE OF MICHIGAN<br>THIRD JUDICIAL CIRCUIT<br>WAYNE COUNTY | PROOF OF SERVICE | CASE NO.<br>16-010319-CK |
|---|---|---|

**TO PROCESS SERVER:** You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

**CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE**

| ☐ **OFFICER CERTIFICATE** | **OR** | ☐ **AFFIDAVIT OF PROCESS SERVER** |
|---|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that:     (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that:     (notarization required) |

☐ I served personally a copy of the summons and complaint.

☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint.
together with _____

List all documents served with the Summons and Complaint

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |

I declare that the statements above are true to the best of me information, knowledge and belief.

| Service fee<br>$ | Miles traveled<br>$ | Mileage fee<br>$ | Total fee<br>$ | Signature |
|---|---|---|---|---|

Name (type or print)

Title

Subscribed and sworn to before me on _____ , _____ County, Michigan.

Date

My commission expires: _____     Signature: _____

Date                            Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

**ACKNOWLEDGMENT OF SERVICE**

I acknowledge that I have received service of the summons and complaint, together with _____

Attachments

_____ on _____

Day, date, time

_____ on behalf of _____

Signature

| STATE OF MICHIGAN THIRD JUDICIAL CIRCUIT WAYNE COUNTY | PROOF OF SERVICE | CASE NO. 16-010319-CK |
|---|---|---|

**TO PROCESS SERVER:** You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

### CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

| ☐ **OFFICER CERTIFICATE** | **OR** | ☐ **AFFIDAVIT OF PROCESS SERVER** |
|---|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that:          (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that:          (notarization required) |

☐ I served personally a copy of the summons and complaint.

☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,
together with _____
                    List all documents served with the Summons and Complaint

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and
have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |

I declare that the statements above are true to the best of me information, knowledge and belief.

| Service fee $ | Miles traveled $ | Mileage fee $ | Total fee $ | Signature |
|---|---|---|---|---|
| | | | | Name (type or print) |
| | | | | Title |

Subscribed and sworn to before me on _____ , _____ County, Michigan.
                                                    Date

My commission expires: _____   Signature: _____
                              Date                              Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

### ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _____
                                                                                          Attachments

_____ on _____
                                          Day, date, time

_____ on behalf of _____

Signature

| STATE OF MICHIGAN THIRD JUDICIAL CIRCUIT WAYNE COUNTY | PROOF OF SERVICE | CASE NO. 16-010319-CK |
|---|---|---|

**TO PROCESS SERVER:** You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

## CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

☐ **OFFICER CERTIFICATE**    OR    ☐ **AFFIDAVIT OF PROCESS SERVER**

I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that: . (notarization not required)

Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that: · (notarization required)

☐ I served personally a copy of the summons and complaint.

☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint.
together with _____
List all documents served with the Summons and Complaint

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
|  |  |  |
|  |  |  |

I declare that the statements above are true to the best of me information, knowledge and belief.

| Service fee $ | Miles traveled $ | Mileage fee $ | Total fee $ | Signature |
|---|---|---|---|---|

Name (type or print)

Title

Subscribed and sworn to before me on _____ , _____ County, Michigan.
Date

My commission expires: _____    Signature: _____
Date                              Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

## ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _____
Attachments

_____ on _____
Day, date, time

_____ on behalf of _____

Signature